J-A27021-25

2025 PA Super 291

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
SCOTT MURRAY :
:
Appellant : No. 1327 EDA 2024

Appeal from the Judgment of Sentence Entered April 15, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000025-2022

BEFORE:  BOWES, J., MURRAY, J., and BECK, J.

OPINION BY MURRAY, J.:                     **FILED DECEMBER 30, 2025**

Scott Murray (Appellant) appeals from the judgment of sentence imposed following his nonjury conviction of recklessly endangering another person (REAP).[1]  Appellant challenges, *inter alia*, the sufficiency of the evidence supporting his conviction.  After careful review, because we conclude insufficient evidence supported the requisite *mens rea* for a conviction of REAP, we reverse Appellant's conviction, and vacate his judgment of sentence.

The trial court summarized the facts, adduced at trial, underlying Appellant's conviction:

On May 16, 2021, at approximately 10:49 p.m., Philadelphia Housing Authority Police Officer Carl Hickey [(Officer Hickey)] was on duty when he received a call from dispatch.  N.T., 2/6/24, at 9.  Officer Hickey [responded] to [the complainant's apartment], in the City and County of Philadelphia, for a report of a shooting

_____

[1] 18 Pa.C.S.A. § 2705.

incident.[2] *Id.* at 9-10. Officer Hickey met with the individual who resided there.

In [the complainant's] apartment, Officer Hickey observed a hole, the size of a dime, in the kitchen wall. *Id.* at 13. Officer Hickey testified that, during his five years as a police officer, he had observed thousands of bullet holes. *Id.* at 14. Based on his personal knowledge, the hole in the wall looked similar to a bullet hole. *Id.* After ensuring that no one [] was injured, Officer Hickey called Southwest Detectives[ Division of the Philadelphia Police Department (Southwest Detectives)]. *Id.*

[That same day], Detective Dennis Slobodian [(Detective Slobodian)], who had been a detective with Southwest Detectives since November 2007, responded to the shooting investigation. *Id.* at 16-17. Detective Slobodian testified that he had handled numerous investigations[,] from fraud, to shootings, robberies, and firearm violations. *Id.* at 16. In relation to shooting investigations, Detective Slobodian had performed various duties, including responding to [crime] scene[s], photographing the [crime] scene[s], processing ballistic evidence, and interviewing witnesses. *Id.*

… Inside the kitchen area, Detective Slobodian observed holes in the walls [indicating that an object] traveled from one side of the room to the other side of the room, [and] end[ed] up high toward the ceiling area. *Id.* at 17-18. Detective Slobodian suspected that a shooting had occurred. Following the trajectory of the holes, [] Detective [Slobodian] continued his investigation by going to the residence next door…. *Id.* at 18. There, Detective Slobodian came into contact with Appellant. [Appellant's] apartment was cleared, and Appellant was detained while Detective Slobodian obtained a search warrant. *Id.* at 18-19.

….

In Appellant's bedroom, Detective Slobodian observed a hole in the closet door. *Id.* at 18. [] Detective Slobodian then

---

[2] The complainant did not testify at trial. In response to Appellant's hearsay objection, the prosecutor proffered Officer Hickey's testimony that he responded to a report of a "shooting incident" not for its truth, but to "explain[] why [Officer Hickey] went to that location." N.T., 2/6/24, at 10-11.

observed a hole in the wall shared by the two apartments and inside Appellant's closet. *Id.* at 23. … [Also i]nside Appellant's bedroom, Detective Slobodian recovered two green … handguns …. *Id.* at 19. Detective Slobodian conducted a records check, which showed that Appellant had recently purchased three firearms that were registered under his name.

….

Detective Slobodian took a statement from Appellant at Southwest Detectives [Division headquarters]. *Id.* at 24. [] Detective [Slobodian] read Appellant his [***Miranda***[3]] rights. *Id.* at 25. Appellant's interview[, admitted into evidence as Exhibit C-3,] was audio and video recorded. *Id.* at 27. In the interview, Appellant stated that the gun accidentally went off while [he was] moving it from his bed. *Id.* at 30.[4]

Trial Court Opinion, 12/9/24, at 2-5 (citations modified; some citations and paragraph breaks omitted; footnotes added).

On May 17, 2021, the Commonwealth charged Appellant with discharging a firearm into an occupied structure[5] and REAP. Appellant filed

---

[3] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

[4] At trial (and now on appeal), the Commonwealth maintained that Appellant did not state, in his interview with Detective Slobodian, that the firearm discharged "accidentally." N.T., 2/6/24, at 33; Commonwealth Brief at 10 n.1 (arguing that "[Appellant] never used the word 'accidentally,' but merely said the gun 'went off.'"). However, our review of Exhibit C-3, which was included in the certified record, confirms the accuracy of the trial court's factual recitation. Trial Court Opinion, 12/9/24, at 5; Exhibit C-3 at 27:32-27:34 (Appellant stating, "the gun went off by accident."); *id.* at 27:45-27:49 (Appellant stating, "Honestly, I picked the gun up off my bed, and it went off."); *see also* N.T., 2/6/24, at 30 (Detective Slobodian agreeing that Appellant stated "that the gun accidentally went off while moving it from his bed").

[5] 18 Pa.C.S.A. § 2707.1(a).

suppression motions in February 2022 and November 2023, the contents of which are irrelevant to this appeal.[6]

On February 6, 2024, the matter proceeded to a bench trial. The Commonwealth called as witnesses Officer Hickey and Detective Slobodian, both of whom testified as described above. Appellant presented no evidence.[7] At the conclusion of trial, the trial court took the matter under advisement.

On February 12, 2024, the trial court acquitted Appellant of discharging a firearm into an occupied structure, and convicted Appellant of REAP. On April 15, 2024, the trial court sentenced Appellant to two years' probation. Appellant timely filed a notice of appeal. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following three issues:

1. Was the evidence insufficient to prove Appellant guilty of REAP[,] where the evidence failed to prove that the discharge of a gun was anything other than an accident, and where the evidence failed to prove that Appellant acted even recklessly in discharging the gun?

2. Did the trial court err and abuse its discretion by permitting expert opinion[s] from two police officers regarding [the] identification of holes in walls as bullet holes, and [the] trajectory and direction of travel of the presumed bullet, where

_____

[6] Upon review of the docket and certified record, it does not appear that the trial court ruled on Appellant's suppression motions.

[7] The parties stipulated that (1) Appellant "has good character for honesty, truthfulness and being law-abiding"; and (2) the Commonwealth would not seek to introduce any of Appellant's inculpatory statements, "other than what was allegedly stated to [] Detective [Slobodian]." N.T., 2/6/24, at 8.

neither officer was first qualified as an expert witness capable of presenting such expert testimony?

3. Did the trial court err and abuse its discretion by admitting Appellant's statement, and then considering that statement when determining Appellant's guilt, in violation of the *corpus delicti* rule?

Appellant's Brief at 3-4 (issues reordered).[8]

In his first, dispositive issue, Appellant argues the Commonwealth's evidence was insufficient to support his conviction for REAP.[9] ***Id.*** at 10-15. Appellant contends that the Commonwealth produced insufficient evidence to support an inference that Appellant acted recklessly in any respect, and that "no evidence was presented that the gun's discharge was anything more than an accident." ***Id.*** at 11, 14.

_____

[8] We note Appellant's objection to the Commonwealth's reference, in its appellate brief, to (1) hearsay explicitly redacted from the affidavit of probable cause supporting the search warrant for Appellant's home; and (2) Appellant's statements made in his recorded interview, which were not published at trial. Appellant's Reply Brief at 2; ***see also*** Commonwealth Brief at 2, 3, 6, 10-11, 13, 17. As it is well settled that we may not consider facts not in evidence, we do not do so in our review of the instant case. ***See Carlino E. Brandywine, L.P. v. Brandywine Vill. Ass'n***, 197 A.3d 1189, 1207 (Pa. Super. 2018) ("[A]ppellate courts normally do not consider matters outside the record or matters that involve a consideration of facts not in evidence. Most importantly, appellate courts do not act as fact finders, since to do so would require an assessment of the credibility of the testimony and that is clearly not our function." (citations omitted)); ***see also Commonwealth v. Faison***, 297 A.3d 810, 824 (Pa. Super. 2023) ("[A]ny argument based on [evidence] which was **not** presented to the trial court is waived for our review." (emphasis in original)).

[9] Appellant preserved this issue in his timely filed, court-ordered Pa.R.A.P. 1925(b) concise statement. ***See*** Concise Statement, 7/26/24, ¶ 1.

Appellant further maintains that

even if the evidence were sufficient to prove that Appellant should have been aware of the danger that the gun could go off by simply handling it, and that his failure to be so aware was a gross deviation from the standard of care that a reasonable person would observe in Appellant's situation (and Appellant in no way concedes that the evidence reached even this level), then the most Appellant could be faulted for was negligence. Mere negligence is insufficient to prove REAP. *See*, *e.g.*, [*Commonwealth v.*] *Gilliland*, [422 A.2d 206, 207 (Pa. Super. 1980)].

*Id.* at 15 n.6.

The Commonwealth counters,

[t]he physical evidence, along with the officers' testimony, clearly demonstrated that the bullet pierced [Appellant's] bedroom closet door and then the shared wall with the adjacent unit, [and] traveled through the kitchen, … before finally stopping near the ceiling. N.T., 2/6/24, at 17-19. In light of the common-sense inference that a firearm almost never discharges on its own …[, Appellant's] vague explanation supports an inference of consciousness of guilt.

Commonwealth Brief at 10 (record citation modified).

We recently reiterated the following principles governing appellate review of a sufficiency claim:

The standard we apply in reviewing the sufficiency of the evidence is whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the factfinder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the factfinder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth

- 6 -

> may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Travinski*, ___ A.3d ___, 2025 WL 2790564, *3 (Pa. Super. filed Oct. 1, 2025) (citation and brackets omitted; punctuation modified).

An individual is guilty of REAP if "he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705. "**The *mens rea* for [REAP] is a conscious disregard of a known risk of death or great bodily harm to another person**." *Commonwealth v. Martuscelli*, 54 A.3d 940, 949 (Pa. Super. 2012) (quotation marks and citation omitted; emphasis added). "Conscious disregard of a risk … involves first becoming aware of the risk and then choosing to proceed in spite of the risk." *Commonwealth v. Sanders*, 259 A.3d 524, 532 (Pa. Super. 2021) (quotation marks and citations omitted).

REAP "requires the creation of danger, so the Commonwealth must prove the existence of an actual present ability to inflict harm to another." *Commonwealth v. Shaw*, 203 A.3d 281, 284 (Pa. Super. 2019) (citation omitted).

> This Court has held that [] a handgun … [is] capable of causing serious bodily injury or death. *Commonwealth v. Peer*, 684 A.2d 1077, 1081 (Pa. Super. 1996); *Commonwealth v. Ramos*, 920 A.2d 1253, 1257 (Pa. Super. 2007). However**, the mere act**

- 7 -

**of discharging a firearm does not**[,] **on its own**[,] **constitute** [**REAP**]. *See Commonwealth v. Kamenar*, 516 A.2d 770 (Pa. Super. 1986) (finding evidence insufficient to support conviction where the accused fired a single gunshot away from the direction of other people, into a wooded hillside behind his home); *Commonwealth v. Smith*, 447 A.2d 282 (Pa. Super. 1982) (finding evidence insufficient where no evidence indicated that the rifle was fired at the witness, and it was just as likely that the accused safely fired the rifle into the air). However, discharging a firearm near another person is sufficient to support such a conviction. *Commonwealth v. Hartzell*, 988 A.2d 141 (Pa. Super. 2009).

*Id.* (some citations modified; emphasis added); *see also Commonwealth v. Brockington*, 230 A.3d 1209, 1215-16 (Pa. Super. 2020) (affirming appellant's REAP conviction, based on appellant firing a "warning shot" into the air outside of her residence in the City of Philadelphia, observing "that the potential danger caused by an errant shot fired is far greater in an urban residential area" (quotation marks, citation, and footnote omitted)); *Commonwealth v. Headley*, 242 A.3d 940, 944 (Pa. Super. 2020) (affirming an appellant's REAP conviction, based on the appellant deliberately discharging a firearm from his apartment into his upstairs neighbor's apartment, recognizing that "discharging a firearm near another person or in a manner where the projectile could have struck a person is sufficient to prove REAP" (citation omitted)).

By contrast, "[a] person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct." 18 Pa.C.S.A. § 302(b)(4). "Recklessness is distinguishable from

negligence on the basis that **recklessness requires conscious action or inaction** which creates a substantial risk of harm to others, whereas negligence suggest[s] unconscious inadvertence." *Commonwealth v. Vogelsong*, 90 A.3d 717, 719 (Pa. Super. 2014) (emphasis added; citation omitted); *see id.* at 720 (concluding appellant's conduct was reckless, where she failed to ensure her horse did not wander into a roadway, after previously being informed by law enforcement of the danger this presented, resulting in a motorist colliding with the horse).

Instantly, the trial court rejected Appellant's sufficiency challenge, reasoning as follows:

> [T]here is sufficient evidence to establish beyond a reasonable doubt that Appellant recklessly engaged in conduct that placed another person in danger of death or serious bodily injury. Officer Hickey and Detective Slobodian both responded to investigate a report of a shooting incident at [the complainant's apartment]. Detective Slobodian observed multiple holes and testified to his opinion that the holes were caused by a bullet that originated from Appellant's bedroom. Appellant was in [] possession of two firearms, located in his bedroom. Firearms, by definition, are deadly weapons capable of causing death or serious bodily injury.
>
> Individuals in possession of firearms, especially when they live in densely populated areas and have neighbors who reside adjacent to them in adjoining structures, must exercise reasonable care and implement a practice of safe storage and proper handling of these deadly weapons. Appellant admitted that a firearm accidentally went off when he was moving it from his bed.
>
> The discharge of a firearm from Appellant's bedroom into the neighboring apartment created an actual present ability to inflict harm to another. Notwithstanding Appellant's statement that [the] gun [] went off accidentally, this does not negate that he consciously disregarded an unjustifiable risk of causing death

- 9 -

or serious bodily injury of another by possessing and mishandling a deadly weapon. [Appellant's] failure to implement a practice of proper handling of the firearm is a gross deviation from the standard of conduct a reasonable person would observe when possessing and maintaining a deadly weapon.

Trial Court Opinion, 12/9/24, at 12-13.

The trial court's factual findings are supported by the record, but we disagree with its legal conclusion that the Commonwealth established Appellant's conscious disregard of a known risk. Instead, we find persuasive the cases on which Appellant relies, ***Commonwealth v. Hutchins***, 42 A.3d 302 (Pa. Super. 2012) and ***Gilliland***, ***supra***.

In ***Hutchins***, a jury convicted the defendant of four counts of REAP and other offenses. ***Hutchins***, 42 A.3d at 306. The evidence adduced at trial established that the defendant "got high on an illegal substance and then drove his three young daughters in his vehicle, resulting in an accident injuring all three of his daughters and another innocent driver." ***Id.*** at 312. On appeal, the defendant challenged, *inter alia*, the trial court's denial of his motion for judgment of acquittal concerning the REAP charges. ***Id.*** at 306. The defendant argued that, "absent expert testimony, [the factfinder] could not rely upon [the defendant's] blood test results to establish causation." ***Id.*** at 312. We agreed:

> [T]he Commonwealth was required to present evidence of recklessness **in addition to** [the defendant's] intoxication. The only other relevant evidence presented in this matter is that an accident occurred. However, that [the defendant] exercised poor judgment in negotiating a left turn does not equate to recklessness. … [The defendant] was not observed acting

- 10 -

recklessly, for example dangerously weaving through traffic in an aggressive manner, or driving the wrong way on an off ramp.

*Id.* (emphasis in original; citations omitted).

In **Gilliland**, the defendant appealed his convictions for involuntary manslaughter, 18 Pa.C.S.A. § 2504(a), and REAP, which stemmed from a boating collision. **Gilliland**, 128 A.2d at 206. At trial, the Commonwealth presented evidence establishing that the defendant, who was fishing on a lake with his family, began driving his boat to shore at approximately 9:00 p.m., travelling 25 miles per hour. **Id.** As he was returning to shore, the defendant collided with another vessel, fatally injuring a passenger on the other vessel (the decedent). **Id.** at 207.

On appeal, the defendant challenged, *inter alia*, whether the Commonwealth proved that his conduct was reckless. **Id.** Holding sufficient evidence did not support either of the defendant's convictions, we observed that the "Commonwealth did not prove which boat had the right of way or the appropriate speed limit on the lake." **Id.** We concluded that the defendant "simply failed to see the boat which the decedent was driving. **There was no conscious realization of a substantial risk which was subsequently disregarded,** but rather a general lack of awareness of the situation on the part of the [defendant]." **Id.** (emphasis added).

Here, as in **Hutchins** and **Gilliland**, the Commonwealth failed to present evidence of Appellant's conscious realization and disregard of a known risk. Evidence establishing that Appellant's weapon fired through his closet,

- 11 -

through the neighboring apartment's kitchen, and into the neighboring apartment's ceiling, by itself, is not proof that Appellant acted recklessly. Appellant's statements that "I picked the gun up off my bed, and it went off," and "the gun went off by accident," likewise fail to establish Appellant's conscious disregard of a known risk or "gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation." **See** Exhibit C-3 at 27:32-27:34, 27:45-27:49; **Sanders**, 259 A.3d at 532; 18 Pa.C.S.A. § 302(b)(3).

The Commonwealth essentially argues that proof of **what** happened in this instance is proof of **the manner in which** it happened. **See** Commonwealth Brief at 10 (the Commonwealth noting the evidence "clearly demonstrated that the bullet pierced [Appellant's] bedroom closet door and then the shared wall with the adjacent unit, traveled through the kitchen, and struck another door in the pantry room before finally stopping near the ceiling.").[10] However, the cases upon which the Commonwealth rely all involve instances of defendants **consciously** discharging firearms in a manner that endangered either specific individuals or the public at large. **See**

_____

[10] The Commonwealth additionally suggests as a "common-sense inference" that "a firearm almost never discharges on its own[.]" Commonwealth Brief at 10. We cannot agree that this is a fact the trial court could infer absent some evidence, _e.g._, a test firing of the weapon or testimony from a witness versed in the operation of firearms. Further, the Commonwealth's emphasis on the "significant ammunition" found "in the same closet from which the bullet originated" plainly has no bearing on whether Appellant acted recklessly in the handling of his firearm. **_Id._**

Commonwealth Brief at 11 (citing **Brockington**, 230 A.3d at 1215 (affirming REAP conviction where the defendant consciously fired a shot into the air in an urban area), **Shaw**, 203 A.3d at 285-86 (affirming REAP conviction where the defendant consciously fired a shot into his porch ceiling with an individual "mere feet away"), and **Hartzell**, 988 A.2d at 144 (affirming REAP conviction where the defendant consciously fired a shot into a shallow creek near two individuals)).

Based on the foregoing, even viewing the evidence in the light most favorable to the Commonwealth, the evidence fails to support the trial court's inference that Appellant acted recklessly. **See Shaw**, 203 A.3d at 284 ("[T]he mere act of discharging a firearm does not[,] on its own[,] constitute [REAP]." (citation omitted)). Accordingly, Appellant is due relief.

Conviction reversed. Judgment of sentence vacated. Appellant discharged.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/30/2025